Judge Nicholas
delivered the opinion of the court.
Tins is ain appeal from a judgment rendered against the appellant, upon a seire facias issued on her acknowledgment, as special bail, made in 1824.
The case is, in all respects, like that of Peteet vs: Dudley, VII Monroe, 130, where it was determined that the hail wits not liable. That decision is now called in question, and we are invited to review and overrule it. This we should have great hesitation in doing, even if we entertained much greater doubts of its propriety than we do. The legislature has since provided for the casus omissus suggested in that opinion, and many cases were ruled in the circuits in conformity to it. When a construction has thus been given to an act of assembly by a solemn adjudication of this court, that construction should never afterwards be lightly changed. Never, except upon clear grounds and upon adequate motives of general policy. The evils likely to ensue-from such vascillation in the decisions of this court upon the construction of the statute, are much greater than would generally arise from an erroneous construction. We ought never to disturb a construction solemnly given by our predecessors years' back, except we feel morally certain not only that *507 they were wrong, but that we are right in the pro-nosed substitute. Now it so happens, that we doubt the strict propriety of every construction that has been attempted to be given to the act of 1821 upon this subject. We believe a similar doubt has generally pervaded the best professional minds in the state. It must be a bold mind indeed that, ventures to suppose it has certainly arrived at the true construction of that act. There never wag one, perhaps, the true construction of which it wag more impracticable to ascertain with absolute certainty.
The form of the recognisance of bail prescribed by an act of Virginia, still in force, was the same in substance as that used in England. Memorandum “that on the day of E F undertook for C D, at the suit of A P, that in case C D should be cast in said suit, he, G D, will pay and satisfy the condemnation of the court, or render his body to prison in execution for the same, or that E F will do it for him.” See I Littell’s Laws, 482. By the net of 1810, I. Dig. 258, the form was altered to a simple acknowiegment of special bail, which was declared to. have the force of a recognisance.
According to the terms of this recognisance, and other express statutory provisions, the bail had a rigid to discharge himself by a surrender of his principal, any time before his liability was fixed.
It seems to be agreed on all hands, that the prescribed form of the recognisance is not altered by the act of 1821; that construction cannot be carried so far as to expunge a single letter of it.
A necessary enquiry to ascertaining whether bail be liable at all since the act of 1821, will, therefore, bej whether by that act. his power to take and surrender his principal to prison is taken away, and if so, the» the eifect thereby produced on his responsibility.
The act is susceptible of two plausible constructions. The one, that it abolishes imprisonment fop debt altogether, except under mesne process. The other, that it only takes away the use of the ca. $«, The first construction has in its aid. the title of the *508 act, which is, “ to abolish imprisonment for debt7$ and an allowable interpretation of the third section, which applies it as well to cases of imprisonment accruing after, as to those which had accrued prior to its passage. That section authorizes a magistrate to discharge any one confined on civil process, without his making any surrender of Isis estate, Or taking the oath of an insolvent debtor. It is difficult to conceive a reason why a person confined subsequently to the act on process, after judgment, should not receive such a discharge, as well, as those confined before its passage. There is a reasonable presnmpr tion, from a view of the whole act, that tiie legislature intended to abolish the system of imprisonment as a means of coercion for the payment of debts, and that in taking away the ca. sa. it was supposed to have been done, and its only motive for allowing a defendant to he held to bail, was to prevent him from removing his property out of the state before judgment, so as to ueep it here to be operated upon by a ji. ja. after the judgment was obtained. It the construction suggested of the third section be the true one, it is difficult to resist the inference, that such was the general intention of the legislature. For, if a defendant was-entitled to his discharge the moment he was placed in custody, it would be idle to put him there, and it is fair to infer, that it was intended to prohibit his being placed there.
Tiie other construction, however, is not without plausible grounds in its favor. The mere words of the act are certainly not very appropriate, and scarcely adequate to the total abolition of imprisonment for uebt. The use of the ca. sa might be denied ; and the defendant still liable to imprisonment, by modes well known to the law. For instance, he might be taken and surrendered by his bail, or upon surrender by himself be lawfully committed and held in confinement.
If the first construction prevail, all modes of imprisonment, after judgment, are denied, and it would be illegal to take him under a bail piece, or to commit after a surrender. If the second *509 should prevail, be could bo so taken
Under the first, bail, not fixed prior to the act, was discharged- For, according to the terms of the recognisance, the bail had a right to discharge himself, by a surrender of the principal, and if the law afterwards took away this power, it thereby absolved him from Ids engagement.
Under the second construction, in sue!', case the bail would not have been discharged. For it was no part of the condition of the recognisance, that the ca. sa. should be used before the bail became liable. The courts, in favor of the bail,'required thé plaintiff to use a ca. sa. before he was allowed a scire facias or action of debt on .the recognisance; and ex gratia allowed the bail to discharge himself by a surrender'of the principal, any time before the return day of the scire facias returned executed. But this, both by the rule of court and our statute, was only on the terms of paying the costs of the scire fa-. cias. When, then, the law denied to the plaintiff the use of the ca. sa., it might well have been contended, that the courts should abolish their rule, and not require the issuing of a ca. sa. as a necessasary prerequisite to the fixing of the liability of bail.
Which of the two constructions we should adopt, if the question were open, we should be much at a loss to determine. There are many and persuasive arguments in favor of each. In such cases of doubt and uncertainty, it must ever be a source of congratulation to us, to find the responsibility of an election taken from us by our predecessors. Such is the fact here. The point was solemnly determined by this court in 1826. The first construction was then adopted, and in the case of Holland vs. Bouklin, IV Monroe, 150, bail entered into prior to the act, held to be discharged by it.
That such was the construction put upon the acf by that case, is manifest not merely from the necessity of it in order to attain the conclusion to which the court arrived, but from the following language used in the opinion. “ The argument amounts to this, that after this recognisance was acknowledged- *510 upon conditions disjunctive and alternative, tbe act has liad the effect to strike out one of those conditions, (the render of the body in execution,) and placed it on the single condition, that the bail shall pay the money if the pricipal does not. From the premises that since the recognisance was entered into, the law has rendered one of the conditions impossible, the conclusion of law would be, that the obligation is discharged.”
What is the effect of this construction on the liability of bail entered into since the passage of the act, as already stated, has been determined in the ease of Peteet vs. Owsley. We percebe no sufficient reason for overruling that case.
To induce us to do so, it is insisted, that though the act totally abolished imprisonment for debt, except under mesne process, and took from hail the bower of surrendering the principal after judgment, 'it thereby rendered that condition of his recognisance illegal, and the only effect was to reduce the recognisance to the other and single condition of satisfying the condemnation of the court. We arc cited to authorities to shew, that if one of the conditions of a disjunctive obligation is illegal or impossible at the time of giving it, the obligation is the same as if it contained no such condition. We do not feel the force of those authorities, or the princi - pie they are cited to establish. They by no means serve to clear up the difficulty arising from two conflicting and irreconcilable laws. We cannot but feel great difficulty in determinining, that an obligation containing two conditions, both authorized and directed by law, is, nevertheless, an obligation with only one condition, because the other is against or contrary to law. Those who use the argument may convict the law, if they will, of the absurdity of authorizing and condemning an act at one and the same moment, and still attempt to extract practical meaning from it. But we cannot consent to deprive a man of the benefit of a condition in his contract expressly authorized by law, upon the argument that such condition is illegal. When it is conceded that construction cannot alter the form of the recognisance, it seems to us the question is sur *511 rendered. The bail has aright to the benefit of the whole form, ami those who attempt to charge him, must find law to do it on other grounds, than that part of it is illegal.
This argument is susceptible of another answer. It is to be found in the case of Fullerton vs. Agnew Holt, 148, which was this. Scire facias against bail, reciting a recognisance ta’<en in the time of King William the third, wherein the condition was, that the defendant should render.his body prisoner to the marshall of the marshalsea of our present queen; it was urged that this condition was impossible, and, in consequence, the recognisance single. Led. per Holt C. J. Where the condition is underwritten or endorsed, there that only is void and the obligation single. But where the condition is part of the lien itself, if the condition be impossible, the obligation is void. The same case is reported in I Salk. 172, and is cited with approbation in Comyn’s Digest and other books.
That the legislature meant somthing is presumable. That it is our duty to ascertain its meaning, if practicable, is conceded. That it intended some liability on the part of bail is also presumable. But how, under the construction that it was intended also totally to abolish imprisonment for debt, this liability is to be ascertained, how and when it should be fixed, is as unascertainable as the quadrature of a-circle. That by disregarding the form of the recognisance, any one may fashion a new species of liability according to his own fancy, is readily-admitted. But so to fashion a new species of liability, without law for it, is denied to be within the judicial prerogative. .
Our predecessors have said, that to effectuate the intended liability against bail, it was indispensable the legislature should have altered the form of the recognisance. The legislature has acquiesced in that determination, and supplied the omission, in a way that makes the liability of bail conform to what the court had supposed to be the general intention of the act of 1821 as to the total abolition of imprisonment for debt. We feel disposed to acquiesce also, and leave this whole matter as we found it»,
Dissent
Bibb, for appellant ; Denny, for appellee.
Wherefore, the Chief Justice dissenting, the judgment must be reversed, with costs, and cause remanded, with directions to enter judgment on the _ scire facias- in favor of the defendant.